### Ex Parte Jewel Redwine.

#### No. 6473. Decided October 19, 1921.

**1.—Habeas Corpus—Conditional Parole—Governor's Proclamation—Constitutional Law—Statutes Construed.**

Article 1057-a, chapter 4, title 12, Vernon's Criminal Procedure, which states as conditional to the granting of a parol that the prisoner shall be

subject to the provisions of said Act and to the regulation which may be made by the Prison Commission, and article 1057-h, same Act, authorizing the Prison Commission to issue warrant for the arrest of the convict if he violates the parole, and article 1057-b, that the prisoner shall be subject to be taken back at any time under the direction of the Governor, does not abridge or infringe on the power of the executive to grant reprieves, etc.

### 2.—Same—Parole—Prison Commission—Rule Stated—Governor.

This court is of opinion that in the exercise of executive clemency to one convicted of felony the Governor may impose such conditions as he sees fit, and this may be done by direct expression or by inference and implication, and it is only when the conditions are illegal, etc., that any question concerning them can be raised in the courts. And where relator accepted the conditions under the law and the rules of the prison commission, and the Governor thereby granted and the relator accepted said parole, he accepted the statutes and rules of the prison commission relating thereto.

### 3.—Same—Case Stated—Conditional Parole—Re-arrest of Convict.

Where a former Governor granted the relator a parole containing a condition that the prisoner might at any time be retaken as under the original sentence, and that such retaking was to be under the direction of the Governor, all of which the relator accepted, and it further appeared that a subsequent Governor directed that such prisoner be retaken, and a warrant was issued by virtue of such direction, and the prisoner retaken thereunder, no rights of the relator were violated.

### 4.—Same—Violations of Terms of Parole—Prison Commission—Governor.

It is not necessary that the question of whether relator had violated the terms of his parole be passed upon, where the conditions of the grant make the determination of their violation and the re-incarceration of the prisoner a matter for the Governor, or the Prison Commission and the Governor. Following Ex Parte Rice, 72 Texas Crim. Rep., 587, and other cases.

### 5.—Same—Unconditional Pardon—Rule Stated—Parole—Governor.

Where an unconditional pardon is granted, delivered, and accepted, the Governor has no power to revoke it except for fraud; but the rule is otherwise under a conditional parole.

From Eastland County.

Original habeas corpus proceedings asking release from arrest under a warrant duly issued by the Prison Commission upon proclamation revoking a conditional parole.

The opinion states the case.

*Burkett, Anderson & Orr*, for relator.—Cited State v. Horne, 56 Fla., 125; Ex Parte Horine, 148 Pacific, 825; and cases cited in opinion.

*C. M. Cureton*, Attorney General, and *L. L. Sutton*, Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, Judge.—Upon presentation of an original application therefor to a member of this court in vacation, a writ of habeas corpus was granted relator Jewel Redwine and made re-

turnable before the full court at this term. The matter is now before us for consideration on the merits of said application.

Relator was in the State penitentiary serving out a sentence of eighteen years for murder, final judgment having been rendered against him in said cause on May 19, 1920 (221 S. W. Rep. 605). On November 22nd or 23rd, 1920, one G. E. Bedford of Cisco made written application duly sworn to by him asking that relator be paroled to him, stating therein that he agreed to furnish employment to relator until the latter received his final discharge, said employment consisting of running a road grader on a county road contract, and to pay relator the sum of $4.50 per day; and further stipulating to report promptly to the Prison Commissioners any absence from work, or any violations of the conditions of said parole on the part of relator. On November 23, 1920, the following parole was issued from the office of Governor Hobby, then Governor of Texas:

"Proclamation
by the
Governor of the State of Texas.

To All to Whom These Presents Shall Come:

WHEREAS At the ———— Term, A. D. 19—, of the District Court of Eastland County, State of Texas, Jewell Redwine was convicted of a charge of murder, and his punishment assessed at ———— years confinement in the State penitentiary; and

WHEREAS, It appears that applicant has now been confined in the County Jail for more than 23 months and now Hon. G. E. Bedford is asking for his parole and

WHEREAS, Hon. G. E. Bedford agrees to pay the said Jewell Redwine the sum of $4.50 dollars per day for his services running a road grader on the County Road, also to take a friendly interest in him and to report to the Commissioners each month in regard to his health and conduct.

WHEREAS, The Board of Prison Commissioners, who investigated the facts surrounding this case, recommend that the applicant be permitted to go out of the confines of the prison enclosures, and yet remain in the boundaries of the State of Texas, subject to the rules of parole as provided by the Board of Prison Commissioners;

Now, Therefore, I, W. P. Hobby, Governor of Texas, do by virtue of the authority vested in me by the Constitution and laws of this State, hereby, for the reason specified, now on file in the office of the Secretary of State, grant the said Jewell Redwine a parole, conditioned on his or her good behavior and observance of the law and rules under which application for a parole was made.

IN TESTIMONY WHEREOF, I have hereunto signed my name and caused the Seal of State to be hereon impressed, at the city of Austin, this 23rd day of Nov. A. D. 1920.
Seal

W. P. Hobby
Governor of Texas.

By the Governor.
C. D. Mims,
Secretary of State."

It appears that thereupon relator was released from said confinement. On July 1, 1921, Governor Neff, who had succeeded Governor Hobby, issued the following proclamation:

"Proclamation
By the
Governor of the State of Texas

TO ALL TO WHOM THESE PRESENTS SHALL COME;

WHEREAS, At the August Term A. D. 1919, of the District Court of Eastland, State of Texas,
JEWELL REDWINE
was convicted of a felony, to-wit: Murder, and his punishment assessed at eighteen years confinement in the State penitentiary and

WHEREAS, it is now appearing to me that the said Jewell Redwine was on the 25th day of November, A. D. 1920, granted a parole by the then Governor of Texas, and that he was paroled to one G. Bedford of Cisco, Texas; and

WHEREAS, it further appearing to me that the said Jewell Redwine has broken the terms and agreement under which he was granted a Parole;

NOW, THEREFORE, I, Pat M. Neff, Governor of Texas, do, for legal and satisfactory reason, by virtue of the authority vested in me under the Constitution and laws of the State of Texas hereby revoke the Parole of the said Jewell Redwine, and direct that he be again taken into custody and taken to and confined in the State Penitentiary until the expiration of his full term of sentence.

IN TESTIMONY WHEREOF, I have hereunto signed my name officially and caused the Seal of State to be hereon impressed at the City of Austin, Texas, this the 1st day of July, A. D. 1921.

Pat M. Neff
Governor of Texas

SEAL

S. L. Staples,
Secretary of State."

On July 2, 1921, the Board of Prison Commissioners of this State made the following order:

"Office of
Board of Prison Commissioners
Huntsville, Texas, July 2, 1921.

There coming on for consideration certain proclamations made
and issued by the Governor of the State of Texas, under date of
July 1, 1921, duly attested by the Secretary of State, revoking pa-
roles heretofore granted to the following named convicts and di-
recting that said convicts be again taken into custody and confined
in the State Penitentiary, each until the expiration of his respective
sentence, the names of the convicts whose paroles were so revoked
and the dates of issuance of such paroles being as follows, to-wit:

| Name of Convict | Date Paroled |
|---|---|
| Jewell Redwine | November 25, 1920 |
| J. W. Roberts | December 17, 1920 |
| Jewell Garrett | December 22, 1920 |
| Jim Carson | November 28, 1920 |
| W. McCornico | January 21, 1920 |

It further appearing that the above named convicts have not com-
pleted serving the sentences heretofore passed upon them, that they
are not now in custody nor confined in the penitentiary in pursuance
of said sentences and their paroles havnig been revoked that they
are legally bound to complete the serving of such sentences, it is
therefore unanimously resolved and ordered by the Board of Prison
Commissioners of the State of Texas that each of said convicts be
retaken in custody and returned to the penitentiary to complete his
respective term in accordance with the order, judgment and sen-
tence of the court on file; it being hereby further unanimously ordered
that such warrants, orders, notices or instructions as may be legally
necessary be forwarded to the sheriffs of the various counties in
which such paroled convicts are now located, directing and author-
izing such sheriffs to take and retain said convicts in their custody
until such time as they may be delivered to duly authorized agent
or agents of the State penitentiary.

I hereby certify that the foregoing is a true and correct copy of
order duly adopted at a regular meeting of the Board of Prison
Commissioners of the State of Texas, held in its offices at Hunts-
ville, Texas, on the 2nd day of July, 1921.

Given under my hand and seal of the Commission, this 9th day
of July, 1921.
SEAL

O. F. Wolff
Secretary, Board of Prison
Commissioners, State of Texas."

A warrant was issued for the arrest of relator and his recommit-
ment to the penitentiary as under his said sentence, and from cus-

tody under said warrant he seeks relief in the present proceeding. In an agreed statement of facts accompanying the application appear the rules of the Prison Commission in regard to parole, from which we learn that if a paroled prisoner desires to change his employment or residence, he must first make application in writing to the Prison Commissioners and obtain their consent to such change; also that any paroled prisoner shall be liable to be retaken and returned to the penitentiary for any reason deemed sufficient to the Prison Commission; also that no application for parole will be considered unless the applicant has served the minimum time fixed by law for his punishment for the crime for which he was convicted. From said agreed statement it also appears that relator worked for said Bedford but a few days after his release and had made a number of changes of employment, none of which had been reported to the Prison Commission and to none of which they had given their consent.

As we understand the certificate of Acting Secretary of State, C. W. Payne, and the statement of Mr. Singletary, Chief Clerk of the Criminal Records Department of the State Penitentiary,—both of which appear in said statement of facts, the record shows no recommendation by the Prison Commission, of the parole of relator.

The parole statutes of this State appear in Chapter 4, Title 12 of Vernon's Crim. Proc. We observe that Article 1057C thereof forbids consideration of a parole for a convict till he has served the minimum time fixed by his sentence; and that Article 1057A states as conditions to the granting of a parole, that the prisoner shall be subject to the provisions of this Act and to the regulations and conditions which may be made by the Prison Commission; Article 1057H authorizes a majority of the Prison Commission, if they have reasonable cause to believe a prisoner has violated his parole, etc., to issue a warrant for him and have him returned to the penitentiary; Article 1057B provides that during the life of the parole, the prisoner shall be subject to be taken back at any time as under the original sentence, "but such retaking shall be at the direction of the Governor."

Relator raises the question of the constitutionality of the parole law, which matter we discuss no further than to say that any part thereof wherein the right and power of the Chief Executive to grant reprives, commutations and pardons under the terms of Sec. 11, Article 4 of our Constitution, is in anywise abridged or infringed, would be held by us to be unconstitutional; but such parts of said parole law as prescribe rules and regulations for the action of the Prison Commission in dealing with the prisoners and their duties, which do not abridge or infringe said rights of the Governor above mentioned, would be upheld by us. No particular part of said law being here assailed, further than as just stated, we do not feel called upon at this time to go.

Irrespective of the question of constitutionality, we are of opinion that by reason of his reference thereto in the parole granted herein, and his having expressly made such grant conditioned as under the law and rules of the Prison Commission, the Governor thereby granted,—and the relator accepted,—said parole with the parole statutes and the rules of the Prison Commission relating thereto, as much a part of same as if they had been written therein at length. We are of opinion that in the exercise of executive clemency to one convicted of a felony, the Governor may impose such conditions as he sees fit, and this may be done by direct expression or by reference and implication, and as has often been said, it is only when the conditions are illegal, immoral or impossible of performance, that any question concerning them can be raised in the courts.

If then Governor Hobby granted and relator accepted, a parole containing a condition that the prisoner might at any time be retaken as under the original sentence, and that such retaking was to be under the direction of the Governor, and it further appear that the Governor has directed that such prisoner be retaken, and a warrant has been issued by virtue of such direction, and the prisoner retaken thereunder,— we see no reason to believe that such restraint violates any rights of such prisoner, the relator in the instant case. We do not think it necessary that the question of whether relator had violated the terms of his parole, be passed upon by the courts in any case wherein the conditions of the grant make the determination of their violation and the reincarceration of the prisoner, a matter for the Governor, or the Prison Commission and the Governor. This question has often been considered and discussed by various courts of last resort in this and other states and the nation, and the conclusion seems universal that by whatever name the grant of relief may be called, its exercise by the authority clothed by the Constitution with such power, if conditional, must be construed by all parties affected according to said conditions. If the terms of the grant, expressly or by necessary implication, make any other authority than the courts the arbiters of the question as to when the conditions of the grant have been violated, then the prisoner's quarrel lies not with the courts for refusing to assume jurisdiction but with the Governor when he made the terms of the grant, and the prisoner himself when he accepted them. Carr v. State, 19 Texas Crim. App. 635; Ex parte Rice, 72 Texas Crim. Rep. 587; Ex parte Nelson, 84 Texas Crim. Rep. 570; Arthur v. Craig, 48 Iowa, 264; State Ex Rel. O'Connor, 53 Minn. 135; Ruling Case Law, Vol. 20, p. 573 and authorities cited; 24 Am. & Eng. Ency. of Law, p. 595 and authorities cited; Re Conditional Discharge of Convicts, 56 L. R. A. 658; Fuller v. State, 82 Am. St. Rep. 17; Ex parte Patterson, 146 Pac. 1009; Ex parte Horine, 11 Okla. Crim. Rep., 517; State v. Hunter, 104 Am. St. Rep. 361; Woodward v. Murdock, 124 Ind. 439.

We do not question the correctness of those decisions which hold that, an unconditional pardon having been granted delivered and accepted, the Governor has no power to revoke; but we observe that these and other authorities seem to recognize that when such pardon was obtained through fraud, same may be revoked, in which case if no tribunal is fixed by the terms of the instrument itself for the determination of that issue, recourse may be had to the courts.

We have not discussed separately the various questions as presented by relator in the able brief of his counsel, but believe we have fully covered all of the grounds of his contentions. Not being able to agree therewith, the relator will be remanded to the custody of the officers charged with the execution of the warrant for his arrest and return to the penitentiary.

*Relator remanded to custody.*